# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**JAMES W.,**
**Respondent Below, Petitioner**

**vs.) No. 23-ICA-331**        (Fam. Ct. Mason Cnty. No. 15-D-171)

**CIARA R.,**
**Petitioner Below, Respondent**

**FILED**
**February 8, 2024**
C. CASEY FORBES, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner James W.[1] appeals the Family Court of Mason County's "Final Order on Respondent's Petition for Contempt" entered on July 13, 2023. In the order, the family court denied James W.'s Petition for Contempt against Respondent Ciara R. Ciara R. timely filed a response asking this court to dismiss James W.'s appeal.[2] James W. did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

James W. and Ciara R. are the parents of two children born during their marriage. The parties were divorced by Final Order entered by the Family Court of Mason County on April 18, 2016. On February 8, 2023, the family court heard Ciara R.'s Petition for Modification, her Petition for Contempt, as well as James W.'s seven Petitions for Contempt filed against Ciara R. It is undisputed that at the hearing, the family court judge ordered the parties to communicate through an electronic application ("AppClose"). Ciara R. was ordered to use AppClose to keep James W. informed about the children's grade reports, dates of sporting events, and medical appointments, and James W. was ordered not

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See*, *e.g*., W. Va. R. App. P. 40(e); *State v. Edward Charles L.,* 183 W. Va. 641, 645 n. 1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Petitioner and Respondent are both self-represented.

1

to appear at the medical appointments. The family court judge issued a written Status Order on March 30, 2023, in which these requirements were documented.[3]

On March 31, 2023, James W. filed another Petition for Contempt, asserting that Ciara R. had "not communicated anything" to him about their sons; specifically, James W. contended that Ciara R. had not placed their sons' sporting events on AppClose and thus, she had not complied with the court's order. This petition was heard on June 28, 2023, by the same family court judge who heard the prior petitions on February 8, 2023. At the June 2023 hearing, the family court judge only permitted James W. to pursue violations that he alleged occurred between February 8, 2023 (the date of the previous hearing) and March 31, 2023 (when he filed the petition at issue here). James W. presented printouts from AppClose purporting to show that Ciara R. had only created a single "event" through the calendar function on AppClose. However, Ciara R. presented printouts from AppClose purporting to show that she had created multiple events on the calendar. In response, James W. argued that Ciara R. had failed to complete the necessary "share" function on the application and thus, he was unable to see the content of the events that she created. Ciara R. indicated that she did share the events.

By order dated July 13, 2023, the family court judge ruled that based on the testimony and exhibits presented, it appeared that the parties were having difficulty with the functions of AppClose. Further, the judge advised that she was aware that one parent could delete a calendar event created by the other parent. Finding insufficient evidence to conclude that Ciara R. "willfully and contumaciously violated the Order of the Court," the Petition for Contempt was denied. The judge also ordered the parties to use the "chat" function of AppClose instead of the calendaring function, because the application saves all chat conversations and prevents the deletion of the messages by either party. It is from this order that James W. appeals.

Our standard of review is as follows:

"In reviewing . . . a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl. Pt., [in part,] *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

---

[3] The Status Order dated March 30, 2023, is not in the record here. Thus, it is unclear how the court below ruled on the petitions for contempt filed by both parties. However, the family court judge referenced other portions of the Status Order in her order dated July 13, 2023. The rulings on the prior contempt petitions are not at issue here and are not relevant to the present issue.

*Amanda C. v. Christopher P.*, 248 W. Va. 130, 133, 887 S.E.2d 255, 258 (Ct. App. Nov. 18, 2022); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court order); *See* Syl. Pt. 1, *Carter v. Carter*, 196 W. Va. 239, 470 S.E.2d 193 (1996) (holding that an abuse of discretion standard applies to contempt rulings).

On appeal, James W. contends that the family court judge's rulings were not impartial or objective, but instead that she was prejudiced in favor of Ciara R. Also, James W. asserts that at the hearing on June 28, 2023, he submitted evidence proving that Ciara R. failed to comply with the prior court order directing her to post events (such as sporting events or doctors' appointments) on AppClose, but that the family court judge, showing partiality and bias, ruled in favor of Ciara R. According to James W., the judge incorrectly found that posts to AppClose could be deleted; James W. contends that the application would have shown such deletion had it taken place and notes that he contacted support personnel for AppClose and found that there was no problem or issue with the application. Thus, James W. argues that the judge wrongly blamed AppClose for Ciara R.'s failure to make postings. Finally, James W. alleges that the judge threatened that his child support could be raised if he continued to file petitions for contempt against Ciara R. Citing Rules 2.2 and 2.3 of the West Virginia Code of Judicial Conduct, James W. asserts that the judge was biased and prejudiced in favor of Ciara R. when she denied his Petition for Contempt, as he could show that the judge did not tell the truth in court, kept his witnesses from testifying on his behalf, and did not allow him to submit evidence.

We disagree with James W. that the family court judge showed prejudice or bias in her rulings or conduct of the hearing on June 28, 2023.[4] Further, we find that the findings of fact made by the family court judge were not clearly erroneous, and the family court judge did not abuse her discretion when she applied the law to the facts presented in the case. Instead, upon review of the recording of the family court hearing held on June 28, 2023, we note that the family court judge properly restricted the dates between which James W. was allowed to assert Ciara R.'s noncompliance. Further we note that James W. testified that he had no witnesses to call. Thus, the family court judge did not prevent him from calling witnesses, he simply did not call any. At the hearing, both James W. and Ciara R. presented evidence in the form of printed documents from AppClose. The family court judge asked James W. if he had contacted AppClose's customer support about the problems he was having with AppClose and he said he had not. The evidence presented by both parties was accepted, reviewed by the judge at the hearing, and discussed in the order dated July 13, 2023. The family court judge noted in her order that the exhibits and the testimony of the parties were contradictory and concluded that the parties were having difficulty with

---

[4] This Court does not have authority to evaluate or make any finding regarding James W.'s allegation that the family court judge violated the Code of Judicial Conduct. The Judicial Investigation Commission has such authority. Therefore, we decline to rule on this allegation.

the functions of the AppClose application. Thus, the family court judge found that the testimony and evidence were not sufficient to find and conclude that Ciara R. willfully and contumaciously violated the court's prior order. In sum, we find that the arguments advanced by James W., that are properly before this Court, are unsupported by the record. We find no biased or prejudicial behavior by the family court judge and her findings of fact were not clearly erroneous, nor did she abuse her discretion by denying the Petition for Contempt.[5]

We note that in *Deitz v. Deitz,* 222 W. Va. 46, 54, 659 S.E.2d 331, 339 (2008) (per curiam), the Supreme Court of Appeals of West Virginia acknowledged that "[a]n integral part of the family court's authority to enter final orders of divorce is its corresponding power to enforce those orders through contempt proceedings." Further, the family court's enforcement of such orders is within the discretion of the family court. *See Mark V.H. v. Dolores J.M.*, 232 W. Va. 378, 387, 752 S.E.2d 409, 418 (2013) (per curiam) and *Joshua T. v. Angela M.*, No. 22-ICA-221, 2023 WL 2366493, at *2 (W. Va. Ct. App., Mar. 6, 2023) (memorandum decision). Here, we do not find that the family court judge abused her discretion in denying the Petition for Contempt.

Accordingly, we affirm the family court's July 13, 2023, order.

Affirmed.

**ISSUED:** February 8, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

---

[5] We note that at the hearing on June 28, 2023, when Ciara R. learned that James W. filed another Petition for Contempt earlier that morning, she expressed concern about having to miss work to attend these hearings of petitions filed by James W. The family court judge advised James W. that if Ciara R. were to lose her job due to missing work to attend such hearings, it could affect his child support obligation. We do not find that the judge's guidance was biased, prejudiced, or threatening, rather it was merely instructive.

4